IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES MADDLE ) | |
| ) | |
| v. ) | NO. 3:05-0306 |
| ) | |
| CORRECTIONAL MEDICAL ) | |
| SERVICES, INC. and ) | |
| PAUL ALEXANDER, M.D. ) | |

## MEMORANDUM

Pursuant to 28 U.S.C. § 636(c), the parties in this action consented to have the Magistrate Judge conduct any and all proceedings including the entry of final judgment. See Docket Entry Nos. 25 and 26.

Presently pending before the Court is the defendants' Motion for Summary Judgment (Docket Entry No. 34). Also before the Court is the plaintiff's Response (Docket Entry No. 38) and the defendants' Reply (Docket Entry No. 42). See also Docket Entry Nos. 35-37, 39-41, and 43.

### I. BACKGROUND

The plaintiff is an inmate of the Tennessee Department of Correction ("TDOC") currently housed at the Lois DeBerry Special Needs Facility ("DeBerry"). He filed the instant lawsuit seeking damages under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights alleged to have occurred at DeBerry. He also sets out four claims under state law for medical malpractice, outrageous conduct, negligence/gross negligence, and breach of contract. Named as defendants to the action are Correctional Medical Services, Inc. ("CMS"), a private company which has contracted with the State of Tennessee to provide physician services to inmates at DeBerry, and Paul Alexander, M.D., Director of Medical Services for CMS at DeBerry.

The plaintiff alleges that, in March 2003, he noticed a lump in his throat. When the lump did not go away, he asserts that he signed up for sick call and was seen by a physician's assistant,

Mr. Seahorn, whom the plaintiff alleges told him that the "lump is nothing." See Complaint at 3. In April of 2003, the plaintiff was subsequently examined by Dr. Austin who opined that the plaintiff needed an ultrasound and a biopsy of the lump. Id.

On August 11, 2003, an ultrasound was performed on the plaintiff's throat revealing a small solid nodule in his thyroid. See Plaintiff's Response to Rule 8(b)(7) Statement (Docket Entry No. 40) at ¶ 2. The plaintiff was referred to the General Surgery Clinic for an evaluation on August 19, 2003. Id. at ¶ 3. The consulting physician recommended a referral to a ENT clinic, and the plaintiff was seen by Dr. Sabina Francis on November 14, 2003. Id. at ¶¶ 4 and 6. Dr. Francis recommended a CT scan of the plaintiff's neck and a biopsy of the mass. See Francis Deposition (Docket Entry No. 34-6) at Exhibit 2. The CT scan was conducted on December 15, 2003, at the Nashville General Hospital, id. at Exhibit 3, and the needle biopsy was performed on February 10, 2004. See Plaintiff's Response to Rule 8(b)(7) Statement (Docket Entry No. 40) at ¶ 12.

A pathology report indicated that the mass in the plaintiff's neck was benign and was consistent with a thyroglossal duct cyst. The plaintiff underwent another evaluation by Dr. Francis on April 16, 2004. After physically examining the plaintiff, performing a fiberoptic laryngoscopy and a laryngeal examination, Dr. Francis noted "no acute distress, found no abnormalities other than the mass, and recommended 'excision of the lesion' and a follow-up for "definitive surgical intervention." See Francis Deposition at Exhibit 4.

The plaintiff was seen by a staff physician at DeBerry on April 21, 2004, regarding continued complaints related to the mass in his neck. On that day, Defendant Alexander signed a consultation report requesting approval for the recommended surgery and sent it to the CMS for review and approval. See Plaintiff's Response to Rule 8(b)(7) Statement (Docket Entry No. 40) at ¶¶ 29-30 and Alexander Deposition (Docket Entry No. 34-5) at Exhibit 1. On May 28, 2004, the recommendation was reviewed and rejected by Dr. Campbell, a CMS administrator and medical reviewer. See Alexander Deposition at Exhibit 2.

2

On June 23, 2004, a consultation at the ENT clinic was recommended by a nurse practitioner at DeBerry and the request was approved by Defendant Alexander on July 26, 2004.[1]  Id. at Exhibit 3.  The plaintiff was seen by Dr. Francis on August 14, 2004, at which time Dr. Francis recommended surgery to remove the cyst.  Defendant Alexander approved a consultation request for the surgery on August 16, 2004.  Id. at Exhibit 4.  On September 1, 2004, the plaintiff underwent successful surgery at the Nashville General Hospital to remove the cyst and it was confirmed to be a benign congenital abnormality which had been present since birth.  See Plaintiff's Response to Rule 8(b)(7) Statement (Docket Entry No. 40) at ¶¶ 42-46.  The plaintiff has suffered no complications related to the cyst after its removal.  Id. at ¶ 56.

The plaintiff alleges that, during the approximately 18 months between his first complaint about the lump and the surgery to remove it, he suffered from pain, discomfort, difficulty swallowing, difficulty breathing, nausea, dizziness, and bleeding through his nose and ear.  He contends that he also suffered from emotional distress and mental anguish.  He asserts that he was not informed of the results of the scans and the biopsy and was never told that the lump was benign.  The plaintiff further complains that the defendants delayed treatment and the eventual surgery for financial reasons when his symptoms could have been remedied by more prompt treatment.

## II. THE MOTION FOR SUMMARY JUDGMENT, RESPONSE, AND REPLY

The defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  They contend that the undisputed facts before the Court do not support a constitutional claim under 42 U.S.C. § 1983 and that genuine issues of material fact do not exist which require that this action be heard by a jury.  The defendants raise five (5) specific arguments supporting their motion:

---

[1] At some point subsequent to submitting the initial request, Defendant Alexander obtained final decision-making authority and did not have to submit the consultation request to another CMS administrator.  See Plaintiff's Response to Rule 8(b)(7) Statement (Docket Entry No. 40) at ¶ 61.

3

> 1) the cyst in the plaintiff's throat did not represent a serious medical need for the purposes of the plaintiff's Eighth Amendment claim;
>
> 2) there is no evidence that the defendants acted with deliberate indifference to the plaintiff's serious medical needs;
>
> 3) the plaintiff is not entitled to recover damages for mental distress because he did not sustain a physical injury as a result of the defendants' conduct as required under 42 U.S.C. § 1997(e);
>
> 4) the plaintiff has not shown that a policy, procedure, or custom of CMS was the cause of any wrongdoing as required for a claim against CMS; and
>
> 5) Defendant Alexander is entitled to qualified immunity.

See Defendants' Memorandum in Support (Docket Entry No. 36) at 2-3.

In support of their motion, the defendants rely on the depositions of the plaintiff, Defendant Alexander, and Dr. Francis, the affidavit of Defendant Alexander (Docket Entry No. 35), and the plaintiff's responses to discovery requests.

The plaintiff submits that there are genuine issues of material fact in dispute which must be resolved by the jury and, therefore, summary judgment should be denied. The plaintiff contends that a reasonable jury could find that the lump in his throat constituted a serious medical need and that deliberate indifference existed on the part of the defendants based upon evidence that he endured a four (4) month delay between his initial complaint of the lump in his throat and when he received the first diagnostic test, the August 11, 2003, ultrasound, and nearly an eighteen (18) month delay between his initial complaint and when he underwent surgery to remove the cyst. The plaintiff contends that such delays were unreasonable and excessive and that, during this time, he suffered unnecessary pain and medical complications, as well as mental and emotional distress because he was not informed of the results of the diagnostic testing. The plaintiff finally contends that the deliberate indifference he endured is systemic and constitutes the practice, custom, and usage of CMS and that Defendant Alexander is not entitled to qualified immunity.

4

In support of his response, the plaintiff submits his own deposition, the deposition of Dr. Francis, and the affidavit of Dr. Martin Raff (Docket Entry No. 41-1).

The defendants reply by contending that the undisputed facts demonstrate that the plaintiff has failed to establish the threshold requirements for an inadequate medical care claim under the Eighth Amendment.

### III.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor.  Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

In considering a motion for summary judgment, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party.  SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985).  The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  Id. at 248.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to

5

present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

## IV. THE RELEVANT LAW

### A. 42 U.S.C. § 1983

42 U.S.C. § 1983 does not confer rights upon an individual. Instead, it is a vehicle to seek a remedy for violations of constitutional rights guaranteed elsewhere. Graham v. Conner, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A plaintiff proves a claim under Section 1983 by showing that: (1) the defendant was acting under color of state law; and (2) the defendant deprived the plaintiff of rights secured by the United States Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

### B. A Prisoner's Constitutional Right to Medical Care

The government has a constitutional obligation to provide medical care for the individuals it incarcerates and "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

An Eighth Amendment claim for deliberate indifference has both a subjective and an objective component. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). To satisfy the objective component the plaintiff must allege that he has a "sufficiently serious" medical need. Comstock, 273 F.3d at 703. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Blackmore v. Kalamazoo County, 390 F.3d 890, 897 (6th Cir. 2004).

6

For the subjective component, the plaintiff must demonstrate that the defendant had a sufficiently culpable state of mind, in other words, that the official acted with "deliberate indifference" to the plaintiff's serious medical need. Farmer, 511 U.S. at 834, 114 S.Ct. 1970. Although this standard does not require a showing that the defendant acted with a purpose or intent to inflict harm, the standard is not satisfied by a showing of negligence. See Comstock, 273 F.3d at 703; Estelle, 429 U.S. at 105, 97 S.Ct. 285 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute" a violation of the Eighth Amendment). The plaintiff must show more than medical malpractice and negligence on the part of the defendant because the subjective requirement acts to prevent the constitutionalization of medical malpractice claims. Comstock, 273 F.3d at 703. The plaintiff must demonstrate "deliberateness tantamount to intent to punish." Horn v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994) (citation omitted). See also Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

## V. LEGAL CONCLUSIONS

### A. Qualified Immunity for Defendant Alexander

In Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), the United States Supreme Court determined that prison guards who were employed by a private prison management firm were not entitled to assert the defense of qualified immunity to civil rights claims brought by a state prison inmate. Defendant Alexander attempts to distinguish Richardson and argues that, although he is privately employed by CMS and is not an employee of the state, he is entitled to assert the defense of qualified immunity.

7

In an unpublished decision, Cook v. Martin, 148 Fed. Appx. 327, 2005 WL 2175922 (6th Cir. July 27, 2005), the Sixth Circuit Court of Appeals addressed the issue of qualified immunity for private medical care providers and found that a physician's assistant who was privately employed by a company that provided medical care to inmates was not entitled to assert the defense of qualified immunity. The Sixth Circuit applied the two-part test set out in Richardson for determining whether private defendants enjoy the protection of qualified immunity and found that there is no firmly rooted history at common law of according qualified immunity to privately employed prison medical care providers and that the purposes underlying the doctrine of qualified immunity do not warrant granting qualified immunity for privately employed prison medical care providers. See also Hinson v. Edmond, 192 F.3d 1342, 1344 (11th Cir. 1999) (privately employed jail physician could assert qualified immunity); Gray v. Metropolitan Government of Nashville and Davidson County, 2005 WL 2334119 (M.D. Tenn. Sept. 22, 2005) (unpublished) (nurses privately employed by Prison Health Services, Inc. were not entitled to qualified immunity).

Defendant Alexander has not distinguished the instant case from Hinson, Cook and Gray and has not shown why this Court should not follow these decisions. The reasoning of these decisions applies to facts raised in the instant action, and the Court finds that Defendant Alexander is not entitled to the defense of qualified immunity.

### B. Physical Injury Requirement of 42 U.S.C. § 1997e(e)

The defendants assert that "there is no evidence plaintiff sustained any pain or physical injury as the result of defendants' conduct" and that the plaintiff, thus, "did not sustain an injury which is actionable." See Defendants' Memorandum in Support (Docket Entry No. 36) at 22. The defendants' argument is based on 42 U.S.C. § 1997e(e) which states:

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.

The Sixth Circuit has not issued a published opinion on what constitutes a "prior showing of physical injury" for the purposes of Section 1997e(e). However, the Sixth Circuit has indicated in unpublished opinions that the physical injury required by Section 1997e(e) need not be significant, but must nonetheless be more than de minimis in order for an Eighth Amendment claim seeking damages for mental or emotional injury to go forward. See Jarriett v. Wilson, 162 Fed.Appx. 394, 2005 WL 3839415 (6th Cir. July 7, 2005); Adams v. Rockafellow, 66 Fed.Appx. 584, 2003 WL 21259701 (6th Cir. May 28, 2003); Corsetti v. Tessmer, 41 Fed.Appx. 753, WL 1379033 (6th Cir. June 25, 2002); Styles v. McGinnis, 28 Fed.Appx. 362, 1667273 (6th Cir. Dec. 26, 2001); Benson v. Carlton, 2000 WL 1175609 (6th Cir. Aug. 9, 2000).

The Court finds no merit in the defendants' position for two reasons. First, Section 1997e(e) only sets out a limitation on the type of damages a prisoner plaintiff may obtain. Even though a prisoner plaintiff may be restricted from obtaining damages for mental or emotional injury, the possibility of obtaining nominal, compensatory, or punitive damages is not restricted under Section 1997e(e). See Munn v. Toney, 433 F.3d 1087, 1089 (8th Cir. 2006); Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002). As such, a finding that Section 1997e(e) applies does not mandate dismissal of an action in which nominal, compensatory, or punitive damages are sought.

Second, the undisputed evidence in this action shows that the plaintiff suffered from a mass in his throat which required several types of diagnostic testing and, ultimately, a surgical procedure in order to remove the mass. Based upon these undisputed facts alone, the Court finds that the plaintiff suffered from more than a de minimis physical injury and satisfies the threshold requirement of Section 1997e(e). The fact that the mass was successfully treated and led to no long lasting medical consequences does not, in the Court's view, render it insignificant or de minimis. The plaintiff further alleges that he suffered pain due to the mass, as well as complications including bleeding, nausea, and difficulties swallowing, eating, and breathing. Such physical complications suffice to satisfy the physical injury requirement. See Munn, supra.

9

## C. Eighth Amendment Claim of Inadequate Medical Care

The defendants assert that summary judgment should be granted in their favor because the underlying facts of this case do not support the plaintiff's constitutional claim that he was denied adequate medical care in violation of his Eighth Amendment rights.

### Did the plaintiff have an objectively serious medical need?

The defendants argue that the plaintiff cannot satisfy the objective component of his claim because he did not suffer from a serious medical need. The defendants point out several aspects of the plaintiff's medical situation which they contend support their position that the mass in his neck was not a serious medical condition –- the mass was a benign, congenital abnormality present since birth; the presence of the mass did not require urgent or acute intervention and did not cause the plaintiff to suffer acute distress; there is no proof that the mass caused dizziness or that the lump or delay in removing it caused the plaintiff to suffer pain; surgery was not mandated but merely recommended and the removal of the mass was only to provide definitive treatment, not to relieve pain or other physical problems; and the plaintiff has not suffered any residual problems since the mass was removed.

The Court finds no merit in this argument. None of the aspects of the plaintiff's condition noted by the defendants in any way minimize the basic underlying fact that the plaintiff had a abnormal mass in his throat which, upon examination by multiple physicians, was determined to be a significant enough condition to require an ultrasound, a CT scan, a needle biopsy, and ultimately a surgery to remove the mass. The condition clearly was one which was diagnosed by a physician as mandating treatment, and the treatment which was provided certainly was not either superficial or minimal in nature. Such facts support a conclusion that the plaintiff's condition was serious enough to implicate his Eighth Amendment rights. See Blackmore, 390 F.3d at 896-99. The defendants rely on Mayfield v. Craven, 299 F. Supp. 1111 (E.D. Cal.), aff'd 433 F.2d 874 (9th Cir. 1970), to support their position that an acute physical injury, an urgent need for medical care, and

10

a tangible residual injury are required to show a serious medical need. This 27 year old case is not controlling authority within the Sixth Circuit, and the defendants have not cited any case from within the Sixth Circuit which requires a showing of each of these factors in order to satisfy the objective component of an Eighth Amendment medical care claim. While certainly relevant, the facts that the condition did not require urgent or immediate treatment, that the plaintiff was not suffering acute distress because of the condition, and that the condition was successfully treated do not compel a finding that Plaintiff's condition was minor or insignificant.

> The defendants then set forth the following argument in support of their position:
>
> The "lump" experienced by the plaintiff while incarcerated at DeBerry did not mandate treatment other than the treatment he was provided. The medical proof is that the plaintiff received appropriate care for his condition. Plaintiff has not satisfied the objective component of the "deliberate indifference" test. No person, either a physician or layperson, would recognize the need for medical attention in addition to that which was provided plaintiff, even if they were to disagree with the speed care was provided. The otolaryngologist who removed the cyst testified that, after she recommended surgery that was not urgent, some people want to wait and some want to get it out of the way. Thus, the lack of a "serious medical need" needing treatment other than that which was provided entitles defendants to dismissal of this action.

See Defendants' Memorandum in Support (Docket Entry No. 36) at 17 (footnotes omitted).

The Court does not find that any of the cases cited by the defendants support their contention that the objective component of an Eighth Amendment medical care claim requires the plaintiff to show that he needed "treatment other than the treatment he was provided" or that such treatment was either "mandated" or that a layperson or physician would recognize the need for such treatment. See Defendants' Memorandum (Docket Entry No. 36) at 17. Such a test is simply not a part of the test for determining whether the plaintiff has met the objective component of his claim.

The defendants argue that the plaintiff has not met the requirement set out in Napier v. Madison County, Ky., 238 F.3d 739 (6th Cir. 2001), that a prisoner who complains about a delay in receiving medical treatment must place into the record verifying medical evidence of a detrimental effect of the delay. See Defendants' Reply (Docket Entry No. 42) at 2-3. The Court disagrees with the defendants and finds that the instant plaintiff has complied with this requirement

11

by submitting the affidavit of Dr. Martin Raff (Docket Entry No. 41-2). Dr. Raff states that "the delay in diagnosis, diagnostic imaging, consultative intervention, and appropriate surgery produced prolonged discomfort for Mr. Maddle . . . ." Id. at ¶ 9. Such evidence, at a minimum, raises a genuine issue of material fact on the issue of whether the alleged delay in treatment caused the plaintiff to suffer a detrimental effect and is sufficient to satisfy the requirement of Napier.

The Court finds that the defendants have not shown that summary judgment should be granted in their favor on the issue of whether the plaintiff suffered from a serious medical need for the purpose of his Eighth Amendment claim.

**Did the defendants act with deliberate indifference?**

To satisfy the subjective component of the adequate medical care test, an inmate must demonstrate that the official in question "subjectively perceived a risk of harm and then disregarded it." Comstock, 273 F.3d at 703. This is the deliberate indifference standard. See Farmer, 511 U.S. at 837. The Sixth Circuit has explained that "[t]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." Comstock, 273 F.3d at 703. Accordingly, "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." Id. See also Johnson v. Karnes, 398 F.3d 868, 875 (6th Cir. 2005).

The plaintiff's argument for constitutional liability essentially boils down to a claim that the defendants acted with deliberate indifference because there was a substantial and significant delay in both the diagnosis and treatment of the mass in the plaintiff's throat. See Plaintiff's Response in Opposition (Docket Entry No. 38) at 8. Given his history of being a smoker and the possibility of the mass being cancerous, the plaintiff argues that the delay of over nine months between his initial

12

complaint and the first diagnosis and the delay of over eighteen months between his initial complaint and the removal of the lump establish deliberate indifference. Id. at 9. He also complains about the failure of the medical staff to timely inform him of the results of the diagnostic testing.

With respect to Defendant Alexander, the Court finds that the plaintiff has not set forth any evidence supporting a claim of personal liability against this defendant. Defendant Alexander assumed the role of Medical Director at DeBerry on August 1, 2003. See Affidavit of Alexander (Docket Entry No. 35) at ¶ 2. The only evidence before the Court of action taken by him regarding the plaintiff's health care are three instances when he reviewed and approved recommendations for treatment of the mass in the plaintiff's throat.

On April 21, 2004, he signed and forwarded to CMS for approval a Consultation Request requesting approval of the recommendation by Dr. Francis that the plaintiff undergo surgery to remove the mass. See Plaintiff's Response to Statement of Undisputed Facts (Docket Entry No. 40) at ¶ 30. After this request was denied by CMS, Defendant Alexander approved, on July 26, 2004, a Consultation Request seeking approval for another specialty consultation for the plaintiff, which resulted in the plaintiff's being examined again by Dr. Francis. Id. at ¶¶ 35-36. Defendant Alexander then approved, on August 16, 2004, another recommendation by Dr. Francis for a surgery. Id. at ¶ 41. The surgery occurred on September 1, 2004. Id. at ¶ 42.

It is not clear to the Court how the plaintiff construes deliberate indifference on the part of Defendant Alexander based upon these actions. Quite to the contrary, these actions exhibit a lack of deliberate indifference on the part of Defendant Alexander since, on each occasion, he approved a recommendation for continued treatment and twice approved a recommendation for surgery.

The plaintiff has not pointed to any other evidence of a specific action or lack of action on the part of Defendant Alexander which supports a claim of deliberate indifference. In fact, the naming of Defendant Alexander appears to be based largely upon his supervisory role as the Medical Director at DeBerry. The plaintiff asserts that Defendant Alexander "was responsible for review and oversight of the care provided to inmates at DeBerry . . .," see Plaintiff's Memorandum (Docket

13

Entry No. 38) at 2, and concludes that "Dr. Alexander was responsible for assuring treatment was received in a timely manner and did not." See Plaintiff's Response to Statement of Undisputed Facts (Docket Entry No. 40) at ¶ 64.

The plaintiff also asserts that "Dr. Alexander had information and was aware of Mr. Maddle's condition and history based upon Mr. Maddle's repeated visits to request medical care, the grievances filed by Mr. Maddle, and the action filed in the United States District Court requesting medical care by Mr. Maddle." See Plaintiff's Memorandum (Docket Entry No. 38) at 2. This assertion, however, is conclusory and is not supported by any reference to specific evidence which is in the record.

It is well-settled that a defendant cannot be held liable for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct. Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). A claim under Section 1983 cannot be based upon allegations of supervisory liability or respondeat superior. See Shehee v. Luttrell, 199 F.3d, 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264 (2000); Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982). To be held liable, a supervisor must have encouraged the specific incident of misconduct or in some other way directly participated in it. Shehee, 199 F.3d at 300. At a minimum, the plaintiff must show that the defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct of the offending subordinate. Taylor v. Michigan Dep't of Corrs., 69 F.3d 76, 81 (6th Cir. 1995) (emphasis omitted) (quoting Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)). See also Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (holding that to establish personal liability of a government official under § 1983, a plaintiff must show that the official caused the deprivation of a federal right); Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002); Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989). There is no evidence before the Court which supports such a showing, and no reasonable jury could find deliberate

indifference on the part of Defendant Alexander based upon the facts before the Court.  Summary judgment in favor of Defendant Alexander on the plaintiff's claim under Section 1983 is warranted.

The remaining defendant is CMS.  A private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under 42 U.S.C. § 1983 as one acting "under color of state law." West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988).  As such, CMS can be sued for violations of the plaintiff's civil rights under Section 1983.  See Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993).

However, a private company, even if deemed to be acting under color of state law for the purposes of Section 1983, cannot be held vicariously liable for the actions of its employees on a respondeat superior basis for the purpose of assessing liability under Section 1983.  See Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (1996).  Hence, CMS's liability under Section 1983 must be premised on the showing of a policy that caused a deprivation of the plaintiff's Eighth Amendment rights.  This showing requires use of the same analysis used for determining the liability of a municipality under Section 1983.  See Starcher v. Correctional Medical Systems, Inc., 7 Fed.Appx. 459, 2001 WL 345810 (6th Cir. March 26, 2001) (unpublished) (applying policy requirement to CMS in prison medical care case).

In Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that a municipality can be found liable under Section 1983 if a policy of the municipality itself causes the constitutional violation at issue.  The Supreme Court said, "[i]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.  The plaintiff must show that the governmental entity was the "moving force" behind the violation of the constitutional rights at issue. City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (quoting Monell, 436 U.S. at 694), and that the complained-about action "was taken with the requisite degree of culpability and must demonstrate a direct casual link between the [County's] action and the deprivation of federal rights."  Gregory v. Shelby County, 220 F.3d 433,2441 (6th Cir. 2000)

15

(quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Summary judgment should be granted to Defendant CMS on the plaintiff's Section 1983 claim. Based on the evidence before the Court, no reasonable jury could find in favor of the plaintiff on this claim if this claim were presented at trial.

First, the plaintiff fails to set out a policy on the part of CMS upon which liability can be based. The only actual policy to which the plaintiff points is the general policy of CMS to require approval of the costs of inmate medical care. The plaintiff asserts that "CMA is liable on the grounds that its practice and custom of approval of medically necessary treatment is unconstitutional as applied to the facts of this case." See Plaintiff's Memorandum in Opposition (Docket Entry No. 38) at 11. The plaintiff further argues that "this approval process is constitutionally inadequate in so far as documents are lost and care is delayed or deprived as was the situation with Mr. Maddle." Id.

The underlying flaw in the plaintiff's argument is that there is absolutely no evidence before the Court supporting an argument that the CMS policy of requiring approval of inmate health care costs is in any way unconstitutional. There is nothing about such a policy itself which shows deliberate indifference to the serious medical needs of prison inmates, and the plaintiff fails to support his conclusion with any actual argument. There is certainly no evidence before the Court supporting the plaintiff's assertion that CMS, by virtue of its pre-approval policy, delayed medical care to inmates in a "systemic" manner with deliberate indifference to the medical needs of the inmates at DeBerry. Id. at 3. Indeed, other than the plaintiff's own situation, there is no evidence before the Court regarding other inmates or any examples of delayed medical care.

Although the plaintiff contends that this policy, as applied to him, was unconstitutional, he fails to support such a contention with any evidence. While the plaintiff makes a cursory reference to documents being "lost" during the approval process, he fails to show specific and actual

16

occurrences of lost documents in his own case.[2] Furthermore, even if evidence of documents being lost during the approval process was before the Court, isolated examples of such errors evidences only negligence. However, negligence will not support a claim of constitutional liability.

Secondly, and most importantly, the record in this action simply does not show that the plaintiff was treated with deliberate indifference regarding the mass in his throat and that he suffered constitutionally inadequate health care. The undisputed record clearly shows that the plaintiff was seen and evaluated by medical personnel on a regular basis at DeBerry, that numerous diagnostic tests were performed in order to evaluate his condition and to determine the best course of treatment, and that he was sent to an outside physician for specialty consultations. While he may have subjectively felt that he was not being treated, the undisputed evidence shows that he was not ignored and was not provided with superficial or cursory treatment. All of the treatment provided to the plaintiff confirmed an initial diagnosis of a benign mass, which was eventually removed. There is no evidence before the Court that the plaintiff at any time suffered from an emergency situation or an urgent and acute need for either immediate diagnostic testing or an immediate surgical procedure.

In essence, what this case boils down to is the plaintiff's dissatisfaction with the speed and treatment plan provided to him at DeBerry. He believes that diagnostic tests should have been provided more quickly and that his medical care providers should have provided more information to him about the results of these tests. He believes that his surgery should have been recommended more promptly and that, once recommended, the surgery should have occurred sooner that it did. He disagrees with the conservative treatment plan which occurred and believes that the discomfort, pain, and complications which he suffered would have been alleviated had the medical care providers responded to his needs more promptly.

---

[2] In support of his contention that documents are lost, causing delay in medical care, the plaintiff cites to the deposition of Defendant Alexander, who testified briefly about CMS forms in response to consultation reports getting "lost." See Deposition of Alexander (Docket Entry No. 34-4), at deposition pages 56-60.

17

However, when a prisoner has received some medical attention and the dispute is over the adequacy of that care, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This is especially true when the undisputed facts show that a regular course of medical care was provided to the plaintiff and there is no evidence that such care was woefully inadequate for the medical need presented. The mere fact that the plaintiff disagreed with his treatment fails to support a constitutional claim. See Thomas v. Coble, 55 Fed. Appx. 748, 749 (6th Cir. Feb. 11, 2003) ("difference of opinion does not support an Eighth Amendment claim."); Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Further, the Eighth Amendment does not guarantee a prison inmate the "optimum or best medical treatment." McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978); Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982).

Additionally, the mere malpractice of medicine in a prison setting through negligent acts does not amount to an Eighth Amendment violation. See Estelle, 429 U.S. at 107, 97 S.Ct. 285. Walker v. Norris, 917 F.2d 1449, 1454 (6th Cir. 1990); Roberts v. City of Troy, 773 F.2d 720, 724 (6th Cir. 1985). Accordingly, a constitutional claim is not shown by a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady. See Harrison v. Barkley, 219 F.3d 132, 139 (2nd Cir. 2000).

In the absence of proof of an urgent medical need which required immediate treatment, the delays complained about by the plaintiff regarding his medical treatment simply fail to rise to the level of constitutional concern. See Cuco v. Federal Medical Center-Lexington, 2006 WL 1635668 (E.D. Ky. June 9, 2006) (unpublished) (several month delay in providing diagnostic testing and surgery did not show deliberate indifference); Canady v. Wilkinson, 90 Fed. Appx. 863, 2004 WL 232728 (6th Cir. Feb. 2, 2004) (unpublished) (three month delay in eye surgery was not deliberately

18

indifferent); Reid v. Sapp, 84 Fed. Appx., 2003 WL 22976594 (6th Cir. Dec. 5, 2003) (unpublished) (approving physician's denial of surgery which had been recommended by an outside specialist was not deliberately indifferent); Slone v. O'Dea, 107 F.3d 871, 1997 WL 68218 (6th Cir. Feb. 18, 1997) (unpublished) (failure to follow a physician's recommendation for surgery was not deliberately indifferent); Marshbanks v. Lewis, 26 F.3d 131, 1994 WL 249999 (9th Cir. June 9, 1994) (unpublished) (eight month delay in removing benign lump was not deliberately indifferent).

The high threshold of proof required by Estelle and Farmer and the well-settled principle that negligence will not support an Eighth Amendment claim lead to the conclusion that the stark reality of incarceration is that a prison inmate can succeed on a constitutional claim challenging the quality of his health care only when he sets forth facts showing egregious and deliberately indifferent acts on the part of the defendants. Merely showing that better, more prompt, or more empathetic alternatives existed to the treatment that was provided to a prison inmate fails to satisfy the requirements for a constitutional claim. In the instant action, no reasonable jury could find that the plaintiff was treated with deliberate indifference with respect to the treatment of the mass in his neck.

### D. Supplemental State Law Claims

In addition to constitutional claims under 42 U.S.C. § 1983, the plaintiff also asserts four counts based upon state law. Upon the Court's dismissal of the plaintiff's Section 1983 claims, the Court no longer has original jurisdiction over any of the state law claims asserted by the plaintiff in this action, and the Court declines to exercise supplemental jurisdiction over the state law claims raised by the plaintiff. See 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction").

## VI. CONCLUSION

For the foregoing reasons, the Court finds that summary judgment should be granted to the defendants on the merits of the plaintiff's claims under 42 U.S.C. § 1983 and that the plaintiff's state law claims should be dismissed for lack of jurisdiction.

An appropriate order shall be entered.

	*/s/ Juliet Griffin*
JULIET GRIFFIN
United States Magistrate Judge